## IN RE EMPLOYER LIABILITY OF SPARTAN INDUSTRIES, INC., AND OTHERS v. FRANK T. STARKEY.

136 N. W. (2d) 595.

July 9, 1965—No. 39,307.

*Robert W. Mattson,* Attorney General, *Joseph A. Coduti,* Assistant Attorney General, and *Thomas W. Walsh,* Special Assistant Attorney General, for appellant.

*Maslon, Kaplan, Edelman, Joseph & Borman, John C. McNulty, Ralph Strangis,* and *Stephen B. Swartz,* for respondents.

ROGOSHESKE, JUSTICE.

This is an appeal from an order of the district court following a

review by certiorari of a decision of the commissioner of employment security.

The district court reversed the commissioner's determination that for the year 1961 respondents Spartan of Bloomington, Inc., and Spartan of West St. Paul, Inc., were employers within the meaning of the Minnesota Employment Security Act.

The facts are undisputed. Spartan of West St. Paul, Inc., was organized in Minnesota on June 19, 1961, and began employing salaried employees on August 31, 1961, and continued during the remainder of 1961 for a period of 18 weeks.

Spartan of Bloomington, Inc., was organized on June 19, 1961, and its employment of salaried employees began on September 20, 1961, continuing through 1961 for a period of 15 weeks.

Spartan of Lexington, Inc., also involved in the proceedings, was organized on September 18, 1961. It began employing employees on October 18, 1961, and continued for 11 weeks in 1961.

Spartan Industries, Inc., is a New York corporation incorporated in 1959. During 1961, it had 19 subsidiary corporations, including the three Minnesota-based corporations, conducting retail department stores in various states. It has no place of business or employees in Minnesota. As the parent corporation of the three Minnesota-based subsidiaries, it owns 100 percent of the stock of each. Each of the five officers of the parent corporation holds the same office in the three subsidiaries. They were elected officers of the Bloomington subsidiary in June 1961; of West St. Paul on June 30, 1961; and of Lexington on September 20, 1961, at meetings of the board of directors of each held in New York on those dates. All of these officers are domiciled in New York State and perform their duties for both the parent and subsidiaries in New York City. None of the officers of these subsidiary corporations performed any of his duties in Minnesota and none was physically present within this state prior to the time salaried employees were hired here.

In addition to the foregoing stipulated facts, the record under review indicates agreement that each subsidiary corporation is located in a city of over 10,000 population and together employed a substantial

number of individuals in their respective department stores in each of the weeks the stores were in operation during 1961. Further, each subsidiary admits that since the beginning of 1962, the first full year of operation of their respective stores, it has been an employer subject to the act. Finally, it is agreed that respondents have not organized as separate corporations for the purpose of evading liability under any provisions of the Employment Security Act.

These facts were submitted at a hearing before a referee ordered by the commissioner on his own motion[1] to determine whether the subsidiary corporations were "covered employers" during 1961 under the act, thus rendering each liable to pay contributions to the unemployment compensation fund by way of payroll taxes levied upon wages paid to employees. At least two former employees filed claims for unemployment benefits, which, so far as the record discloses, have not been processed pending a determination of whether respondents are liable for contributions to the fund and if so whether the accounts which would be created thereby are subject to a charge for any benefits awarded.

Since none of the subsidiary corporations employed individuals in Minnesota for a period of 20 weeks during 1961 (the minimum employment required to give an employing unit status as an "employer" under the act), the issue before the referee narrowed to whether the services performed for more than 20 weeks by the nonresident officers wholly outside Minnesota were in "employment" so as to constitute the corporations covered employers. With respect to two of the corporations, Spartan of Bloomington and Spartan of West St. Paul, the referee concluded that—

"* * * the New York officers were employees, their services were

---

[1] Minn. St. 268.12, subd. 13(1), provides: "The commissioner may, upon his own motion or upon the written application of an employing unit, and after a fair hearing, notice of which has been given such employing unit as hereinafter provided, make findings of fact, and on the basis thereof, a determination with respect to whether an employing unit constitutes an employer and whether services performed for, or in connection with, the business of any employing unit constitutes employment for such employing unit."

performed for more than twenty weeks during 1961, and the entire entity of parent corporation and subsidiary corporations can be considered a single employer for the purpose of determining the liability of the employing units involved."

Accordingly, he determined that both were employers in 1961 and liable for contributions. Upon appeal to the commissioner by respondents,[2] the referee's decision was "approved and adopted" as the "findings of fact and decision of the Commissioner." Upon review by certiorari, the district court, by order without an explanatory memorandum, reversed, declaring that all of the subsidiary corporations and the parent corporation "did not fall within the definition of employer under Section 268.04, subdivision 10."

On this appeal, the commissioner, deviating somewhat from his prior determination, takes the position that all three subsidiary corporations should be held subject to the act. With respect to Spartan of Lexington, it is apparent that even if the services of its officers were included, the minimum period of required employment would be insufficient, since its corporate existence in 1961 was less than 20 weeks. The only basis upon which it could also be held a subject employer is by application of Minn. St. 268.04, subd. 10(4),[3] which provides in effect that where employing units are commonly owned and controlled, they may be regarded as a single employing unit for the purpose of determining employer-contribution liability. If, taken together, they fulfill the definition of employer in subd. 10(1), then each employing unit is individually liable. Before deciding, then, whether Lexington may be held liable for employer contributions under the common-control provision, we must first decide whether the services of the officers (de-

---

[2] § 268.12, subd. 13(3).

[3] § 268.04, subd. 10(4), defines "employer" as: "Any employing unit which, together with one or more other employing units, is owned or controlled (by legally enforcible means or otherwise) directly or indirectly by the same interests, or which owns or controls one or more other employing units (by legally enforcible means or otherwise) and which, if treated as a single unit with such other employing units or interests or both, would be an employer under clause (1) of this subdivision."

clared to be employees by § 268.04, subd. 12[1]) may be counted as "employment" within the meaning of subd. 10(1).

The pertinent provisions of § 268.04 contain these definitions:

"Subd. 9. 'Employing unit' means any * * * type of organization, including any * * * corporation, whether domestic or foreign, * * * which has * * * in its employ one or more individuals performing services for it. * * *

"Subd. 10. 'Employer' means: (1) * * * [F]or any calendar year * * *, an employing unit which, for some portion of a day, in each of 20 different weeks, whether or not such weeks are or were consecutive, and *whether or not all of such weeks of employment are or were within the state* within either the current or preceding calendar year, has or had in employment one or more individuals * * *.

\* \* \* \* \*

"Subd. 12. (1) * * * The services performed by officers of corporations are included as employment under sections 268.03 to 268.24.

"(2) The term 'employment' shall include an individual's entire service, performed within or both within and without this state if (a) the service is localized in this state * * *.

"(3) Service shall be deemed to be localized within a state if (a) the service is performed entirely within such state; or (b) the service is performed both within and without such state, but the service performed without such state is incidental to the individual's service within the state, for example, is temporary or transitory in nature or consists of isolated transactions." (Italics supplied.)

The dispute involves a very close question of statutory interpretation not previously decided and made more difficult by comparison of the unique language of subds. 9 and 10(1), quoted above, with similar provisions of other states which are relatively uniform in wording and substance.

The definition of an employer begins, as it does in the statutes of almost all other states, with "an employing unit." Every jurisdiction except Rhode Island and Minnesota defines "employing unit" as one that has in its employ one or more individuals "within this state." Un-

der our act, no part of the services of such individuals need be performed within this state as a condition necessary to qualify these corporations as employing units.

However, not every employing unit is to be regarded as an employer within the definition of that term. Such a unit of employment is not to be considered an "employer" unless conditions specified in subd. 10(1) are fulfilled. The two conditions which bear upon the issues presented are that the individuals performing services be in "employment" and that such employment be for "some portion of a day, in each of 20 different weeks" during a calendar year.[4]

The term employment is separately and extensively defined by subd. 12, which contains eight clauses. It specifies some types of work as included[5] and contains a long list of exempt occupations.[6] Pertinent to the issue before us is the language quoted above which specifies the geographical area within which the services must be performed in order to qualify an individual as being in "employment" within the definition of that term. It is clear that if the term "employment" as used in subd. 10(1) is to be given the meaning ascribed to it by subd. 12 (2, 3), an employing unit is not included within the definition of "employer" where the services performed, whether by officers of a corporation or employees, are all performed outside the state and are therefore not "localized" in the state. Therefore, as respondents contend, the services of the five officers of each subsidiary could not be considered as "employment" in Minnesota because they performed no services whatsoever in this state. This conclusion is dictated by Stevens v. Division of Employment & Security, 207 Minn. 429, 291 N. W. 890. In that case, construing these provisions, we affirmed the commissioner and held that 5 months' service performed by an employee resident of this state for the Great Northern Railway Company in the State of Washington was not localized in Minnesota and, therefore, was not "employment" within the meaning of subd. 12(2, 3).

---

[4]Many jurisdictions require a shorter period of employment; e. g., Rhode Island requires only 1 day a year.

[5]E. g., services performed by officers of a corporation and services performed by an individual for the state.

[6]E. g., agricultural labor.

The commissioner does not contest this interpretation of subd. 12 (2, 3). His contention is that the subd. 12 definition of employment is relevant only to the receipt of benefits by a claimant or the amount of taxation of the employer, and is irrelevant to the question of whether an employing unit comes within the definition of "employer." The core of his argument is that because subd. 10(1) explicitly states that an employing unit may be an employer "whether or not all of such weeks of employment are or were within the state,"[7] the geographical limitations of "employment" prescribed by subd. 12(2, 3) are not applicable for the purposes of subd. 10(1). He declares that only this construction gives an independent meaning to the language quoted above.

Although there is logic to this argument and we are not free from doubt, we believe a different interpretation is more consistent with legislative intent and the purposes of the act. To achieve this objective, we strive to construe all the provisions of the act in pari materia, attempting to reconcile the ambiguity apparent in the provisions before us.

It appears that subd. 9 (defining an "employing unit") was intended to include all proprietors who may possibly be subject to the act as "employers." Subd. 10(1) declares which employing units are subject employers. These two subdivisions must be read together with subd. 12, which defines the term "employment" and specifies other conditions necessary to determine when an "employing unit" qualifying as an "employer" shall be liable for contributions to the Minnesota unemployment compensation fund, as well as when an employee may expect benefits from the fund. We think that the word "employment," wherever used in the act, should have the meaning given it by express definitional provisions, and that meaning includes the geographical requirements as to where the services are performed.[8]

---

[7]No other jurisdiction has this language in its definition of "employer."

[8]We note that at least three states have thought it necessary to suspend the geographical definition of "employment" for certain purposes of the definition of "employer." E. g., N. Mex. Stat. 1953, § 59-9-22(f)(1), permits employment in another state to be taken into account in determining

We are aware, as the commissioner points out, that the historical trend is to increase coverage by the act. However, we are not convinced that the legislature intended that an employing unit should be subject to the act as a covered employer before it has employed Minnesota-based employees for 20 weeks. Under out interpretation, the language in subd. 10(1) providing that weeks of employment may be counted whether or not all were within the state may be harmonized with the requirements of subd. 12(2, 3) that the employment have certain relationships with this state. If the definition of the term "employment" were ignored, an employing unit could be liable as an "employer" without having an individual in "employment" who would be entitled to benefits from the Minnesota fund chargeable against such employing unit's account. This surely was not intended. If applied to an employing unit which had no relationship with Minnesota but which nevertheless would qualify as an "employer" under the commissioner's construction, it would clearly be an unconstitutional result. Also, it would simply represent state competition for coverage to enhance the state fund.

We note that the legislature, in 1963, amended the definition of employer to include a nonresident employing unit which employs within the state one or more employees for one or more weeks.[9] We believe this amendment reveals a legislative intent which supports our interpretation. By it, the legislature has seen fit to deal more stringently with the nonresident employing unit that hires a worker in Minnesota. It need not meet the subd. 10(1) definition of employer either as to number of employees (4 and 1) or their tenure (20 weeks and 1 week). However, it states explicitly that the employment must be within the state. Under our interpretation of the act as it stood in 1961, the amendment drastically and unequivocally reduces the conditions to

who is an employer when the employing unit has elected coverage under arrangements between the New Mexico commission and other appropriate bodies.

[9] L. 1963, c. 562, § 1, now coded as § 268.04, subd. 10(6), provides: "Any non-resident employing unit which employs within this state one or more employees for one or more weeks."

be met before the nonresident employing unit becomes an "employer." But, under the interpretation for which the commissioner contends, whether this provision, to which he points as evidence of an intention to increase coverage, would increase the number of nonresident employing units under the act is doubtful. This is so because the amendment, while it suspends the necessity of looking to the employing unit's employment in another state (permissible under the commissioner's interpretation of the 1961 law), increases the length of time necessary to have *Minnesota* employment in order to be liable under the law.

As the law now stands, the recent amendment (now subd. 10[6]) is the exclusive means by which a nonresident employing unit is defined as an employer for purposes of the Minnesota act. Prior to that amendment, resident and nonresident employing units reached employer status under subd. 10(1). We think that they reached that status only after they had Minnesota-based or localized employment as defined in subd. 12(2, 3) in requisite number and for sufficient weeks as prescribed by subd. 10(1).

The proceedings under review are designed to determine the liability of respondents to the Minnesota fund, not to determine whether any claimants are entitled to unemployment compensation. Although the subject is not covered by the briefs, we do not understand that the effect of our interpretation is to deny benefits completely to all those Minnesota employees of respondents who became unemployed during 1961.

The policy expressed in subd. 10(1), requiring employment for 20 different weeks, is basic to our act. Its intended purpose must be to grant an employing unit a grace period before it becomes a subject employer. The considerations underlying any reduction of that period in this type of complex social legislation is peculiarly a legislative function. Absent a clearly expressed legislative intent or any design on the part of employers to evade liability, we refrain from what, in effect, would be a reduction by judicial construction.

We hold, then, that none of the corporations involved in this case was an "employer" during 1961 because none had employees in employment in Minnesota for 20 weeks. To reach this conclusion, we give

"employment," as used in subd. 10(1), the meaning defined in subd. 12, and ascribe to the language in subd. 10(1) providing that employment without the state may be taken into account a meaning limited by the geographical contacts of employment set out in subd. 12(2, 3). We think this conclusion harmonizes separate provisions of the act and insures, in all cases, an application consistent with due process.

Affirmed.

